PEOPLE *v.* BOMMARITO

1. Arrest—Definition.

   An "arrest" means a seizure of an offender to answer for a crime.

2. Arrest—Motor Vehicles—Stopping.

   The mere stopping of a motorist by a police officer is not an arrest.

3. Criminal Law—Motorists—Police Order—Failure to Stop— Arrest—Constitutional Law.

   Statute providing that a driver of a motor vehicle who is given a visual or audible signal to stop by a police officer legally performing his duty and who wilfully refuses to obey the police direction to halt is guilty of a misdemeanor is not unconstitutional on the ground that it authorizes an officer to arrest for no reason at all (MCLA 1970 Cum Supp, § 257.602 a).

Appeal from Recorder's Court of Detroit, Traffic and Ordinance Division, Andrew C. Wood, J. Submitted Division 1 June 15, 1970, at Detroit. (Docket No. 7,994.)   Decided August 3, 1970.

References for Points in Headnotes

[1] 5 Am Jur 2d, Arrest § 1.
    2 Am Jur 2d, Administrative Law §§ 455, 457.
[2] 29 Am Jur 2d, Evidence § 5.
    5 Am Jur 2d, Arrest § 43.
[3] 5 Am Jur 2d, Arrest § 26.

Sam Bommarito was convicted of failure to stop his motor vehicle in obedience to the direction of a police officer. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*C. Michael Kimber,* for defendant.

Before: McGREGOR, P. J., and J. H. GILLIS and O'HARA,* JJ.

PER CURIAM. Defendant was tried and convicted of wilfully failing to obey the order of a police officer, acting in the lawful performance of his duty, to bring his motor vehicle to a stop. MCLA 1970 Cum Supp § 257.602a (Stat Ann 1970 Cum Supp § 9.2302 [1]).** The case was heard before the Honorable Andrew Wood, sitting without a jury in the Detroit Recorder's Court. Defendant appeals of right.

According to the testimony of the officers, this is what took place.

On April 12, 1969, at 2:35 a.m., Patrolman Wilk and his partner William Branch were patrolling in a regularly-marked Detroit police car. Driving on

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

** "A driver of a motor vehicle, who is given by hand, voice, emergency light or siren a visual or audible signal by a police or conservation department officer, acting in the lawful performance of his duty, directing the driver to bring his motor vehicle to a stop, and who wilfully fails to obey such direction, by increasing his speed, extinguishing his lights, or otherwise attempting to flee or elude the officer, is guilty of a misdemeanor. The officer giving the signal shall be in uniform; and the vehicle driven shall be adequately identified as an official police or conservation department vehicle."

Columbia near Clifford in the City of Detroit, they observed defendant's car directly in front of the squad car. Defendant drove his automobile through a red light at the corner of Columbia and Clifford. The officers followed the defendant for two blocks to Clifford and the Fisher Freeway. At the intersection was a traffic light. Defendant stopped for the light which allowed the police officers to pull their car alongside his. Officer Wilk shined a flashlight into defendant's eyes and motioned for him to pull over. The traffic light turned green and defendant drove on. The officers approached defendant's car at Cass and Henry with their blue light on. They again motioned defendant to the curb. At this point, however, defendant made a right-hand turn onto Henry and proceeded to go the wrong way down that one-way street. The officers turned on their siren and followed. Defendant drove down Henry and turned right on Second, driving through a red traffic light. Again the officers pulled alongside defendant and motioned him to stop. Defendant continued driving to Ledyard, then to Second again, then to Temple, then through an alley to Charlotte, then back toward Second, then to Third. Finally, defendant's car was stopped on Fourth Street where he rammed into the right front fender of the squad car. He was then placed under arrest.

Perhaps understandably, the defendant chooses to argue the legal rather than the factual issues. He claims that MCLA 1970 Cum Supp § 257.602a is unconstitutional. He argues that the stopping of a motorist is an arrest and that the statute authorizes an officer to arrest for no reason at all.

A number of courts have used the term "arrest" to signify a mere stopping and have held that an arrest is complete the moment an officer interferes with a supposed subject's freedom of movement or

location. However, the term "arrest" has more commonly been used in a technical sense to mean a seizure of an offender to answer for a crime. See, *e.g., Cornish* v. *State* (1957), 215 Md 64 (137 A2d 170); *Commonwealth* v. *Lehan* (1964), 347 Mass 197 (196 NE2d 840); *People* v. *Martin* (1956), 46 Cal 2d 106 (293 P2d 52); *People* v. *Henneman* (1937), 367 Ill 151 (10 NE2d 649).

We are unable to agree with defendant that the mere stopping of a motorist by a police officer is, in fact, an arrest. *People* v. *Wade* (1970), 23 Mich App 132.

Defendant also argues that he was not signaled to stop within the meaning of the statute. We do not find this assignment of error meritorious.

Affirmed.