PEOPLE v GLENN

1. CRIMINAL LAW—SEARCHES AND SEIZURES—INVESTIGATORY STOP—
   PROBABLE CAUSE—AUTOMOBILES—INFORMERS.

   Less than probable cause is required to justify an investigatory stop of a motor vehicle by a police officer to investigate information supplied by an informer regarding alleged criminal activities by an occupant of the vehicle.

2. CRIMINAL LAW—SEARCHES AND SEIZURES—INVESTIGATORY STOP—
   REASONABLENESS—AUTOMOBILES—ANONYMOUS INFORMERS.

   Police officers have reasonable grounds to make an investigatory stop of an automobile to investigate information supplied by an anonymous informant regarding an occupant of the car who is alleged to be a bank robber where the informant supplied information including the alleged robber's name, the fact that he would be armed, the description of the car, its license number, when and from where the car would be leaving, and that the alleged robber would be accompanied by a man and a woman.

3. CRIMINAL LAW—SEARCHES AND SEIZURES—EVIDENCE—PLAIN VIEW
   —INVESTIGATORY STOP—AUTOMOBILES—ADMISSIBILITY—CON-
   CEALED WEAPONS.

   A pistol that falls to the ground from under a defendant's coat during the course of a valid investigatory stop of a motor vehicle is in plain view and is therefore admissible at the defendant's trial for carrying a concealed pistol; a subsequent frisk of the defendant by the officers conducting the investigatory stop is justified upon seeing the gun in plain view and a second gun found during such a search is likewise admissible in evidence.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Searches and Seizures §§ 42, 43, 45.
   Validity, under Federal constitution, of warrantless search of automobile—Supreme Court cases. 26 L Ed 2d 893.
[3] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.
   Search and seizure: observation of objects in "plain view."—Supreme Court cases. 29 L Ed 2d 1067.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted June 22, 1977, at Detroit. (Docket No. 29480.) Decided August 12, 1977.

Renell Glenn was charged with carrying pistols concealed on her person. Defendant's motion to suppress the evidence was denied. Defendant appeals by leave granted. Affirmed.

*William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Craig R. John,* Assistant Prosecuting Attorney, for the people.

*Bell, Gage, McSorley, Hudson and Daniel, P. C.,* for defendant on appeal.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. MCDONALD,* JJ.

PER CURIAM. Defendant Rennell Glenn was charged with carrying pistols concealed on her person, contrary to MCLA 750.227; MSA 28.424. Defense counsel brought a pretrial motion to suppress the evidence on the ground that it was obtained as the result of a constitutionally impermissible search and seizure. An evidentiary hearing was conducted on March 30, 1976, at which time the trial court denied the motion. Defendant brings an interlocutory appeal from the court's order denying the motion to suppress.

The record from the evidentiary hearing reveals the following facts. On December 16, 1976, at about 12:30 in the afternoon, a man walked into Detroit police headquarters and stated that he had

* Circuit judge, sitting on the Court of Appeals by assignment.

information about a bank robber. He stated he did not wish to disclose his identity. He told the armed robbery desk sergeant that the robber was one John Werts, that he had robbed a northwest suburban Detroit bank, although he wasn't sure which one, that he would be leaving a certain Detroit motel in 45-60 minutes, that he would be driving a certain car with a certain license number and would be accompanied by a female and another male, and that Werts would be armed with a .357 magnum. The man then left. The desk sergeant, to whom the Werts name sounded "familiar", checked the arrest record book and found that Werts had an arrest history as an armed robbery suspect. The desk sergeant then passed the information on to a sergeant in the surveillance unit who in turn conveyed the information to officers in a marked police car in the area of the motel in question. Shortly afterward, a car meeting the description given and with the license number given pulled out of the motel with two men and a woman inside. Upon being stopped, the three occupants immediately stepped out of their car without being ordered. The men were then asked to step to the rear of the car, where they were frisked. Upon finding no weapons on the men, the officers then asked defendant, who was clutching her coat in a peculiar manner, to go to the back of the car. Upon taking a step, a weapon fell from under her coat. It was a .357 magnum. The officers then frisked defendant and found a second gun in her coat pocket. All three persons were then arrested, and the driver of the car was later found to be John Werts. Defense counsel's motion sought to suppress the guns found on defendant.

Defendant's argument on appeal is that the unknown informant's tip did not provide probable

cause for the warrantless "seizure" of the car. We agree with the trial court that what was involved here was an investigatory stop, which requires less than probable cause, and an incidental protective weapons frisk.

In *People v Eugene Harris,* 43 Mich App 531, 538–540; 204 NW2d 549 (1972), though reversing on other grounds, we approved a police investigatory stop in a situation much like the present one, based on an anonymous telephone call to the police. We stated there:

"The police officers in the present case pulled alongside the car in which defendant was a passenger stating we 'would like to talk to you'. The officers' conduct clearly restrained defendant's freedom of movement and may be deemed a seizure, which is a primary element of an arrest. However, the degree, type, and purpose of the restraint will determine whether the conduct at issue constituted an arrest requiring the existence of probable cause.

"The Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), recognized that not every restraint of a citizen by a police officer constitutes an arrest. This principle was based upon the policy consideration that the police investigatory process is an indispensable function which necessarily outweighs minor intrusions into a person's right of privacy. It is this investigatory process which constitutes the 'stop' portion of the *Terry* Court's 'stop and frisk' rule and is distinguished from an arrest dependent upon the existence of probable cause. Case law interpreting this rule has further articulated its application to investigatory detentions. In *Youngblood v State,* 47 Ala App 571; 258 So 2d 913 (1972), the Court recognized a police officer's right to stop a vehicle to investigate information supplied regarding criminal activity. The Court in *United States v James,* 147 App DC 43; 452 F2d 1375 (1971), was confronted with circumstances analogous to the present case. There the police received information from an informant that two men would leave a specific

address with narcotics. The police proceeded to the described address and observed two men enter a taxi. After stopping the taxi they requested the driver to produce his license and registration and step out of the vehicle. During this process the defendant-passenger pointed a weapon at the officer but was arrested. The *James* court rejected defendant's challenge to his conviction of assault with a dangerous weapon because his arrest was not supported by probable cause. The *James* court reaffirmed the police officers' right to stop persons for investigatory purposes, indicating that the failure to do so would have been a clear dereliction of their duties.

. "We find the police conduct in the instant case to fall within the purview of these authorities. They possessed information describing the defendant's involvement in criminal activity, his appearance and location. This information was sufficient to justify defendant's restraint for investigatory purposes short of an arrest. *People v Bommarito,* 25 Mich App 668 [181 NW2d 613] (1970); *People v Wade,* 23 Mich App 132 [178 NW2d 139] (1970)." *People v Eugene Harris, supra,* at 539–540. (Footnotes omitted.)

See *People v Jeffries,* 39 Mich App 506, 511–512; 197 NW2d 903 (1972), where we held that an on-foot investigatory stop and frisk was justified upon information to police officers from an unidentified man that one Robert L. Jeffries, meeting a certain description, was waving a gun around in a nearby cafe.

Having reasonable grounds to stop the car here, and possessing information that one occupant would be armed, the officers were justified under *Terry* to conduct a protective weapons frisk. Their actions in searching the men first were reasonable, given their information. Finding no weapons on them, they then acted reasonably in turning their attention to defendant, who had her hands in her pockets, clutching her coat closed and pressing it

against her stomach. She then dropped one gun, which became admissible under a "plain view" rationale. *People v Eugene Harris, supra,* at 540. This evidence justified the officers' subsequent frisk of the defendant, revealing the second gun.

The trial court correctly denied defendant's motion to suppress.

Affirmed.