## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 16 2019, 6:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Josiah J. Swinney
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Carl E. McCormack, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 16, 2019 <br><br> Court of Appeals Case No. <br> 19A-CR-159 <br><br> Appeal from the Brown Circuit Court <br><br> The Honorable Judith A. Stewart, Judge <br><br> Trial Court Cause No. <br> 07C01-1705-F6-290 |

**Mathias, Judge.**

[1] Following a jury trial in Brown Circuit Court, Carl E. McCormack ("McCormack") was convicted of Level 6 felony receiving stolen auto parts and

determined to be an habitual offender. McCormack appeals and presents one argument: whether the evidence is sufficient to support his conviction.

We affirm.

## Facts and Procedural History

The facts most favorable to the jury's verdict reveal that in May 2017, Chad Austin ("Austin") owned a gold 2005 Ford F350 pickup truck. Austin wanted to sell the truck, so he parked it at a location where it could be seen from a nearby road. Brown County Sheriff's Deputy Detective Brian Shrader ("Detective Shrader") often drove by the truck on his way to work. Knowing that there had been a recent rash of thefts involving larger Ford pickup trucks, which are more easily stolen due to the design of the door lock, Detective Shrader was concerned that Austin's truck would also be stolen.

On May 24, 2017, Detective Shrader drove by where Austin's truck had been parked and noticed that it was no longer there. The following morning, one of Austin's employees, who had also noticed that the truck gone, asked Austin if he had sold the truck. Austin stated that he had not, and he telephoned the police to report the theft. Detective Shrader learned of the report that the truck had been stolen and began to investigate.

Less than an hour after the vehicle had been reported as stolen, Detective Shrader and Deputy Austin Schonfield ("Deputy Schonfield") observed a truck matching Austin's at property on Hoover Road in Brown County. Detective Shrader watched as McCormack and three other individuals walked back and

forth from the truck. The deputies called for backup and blocked the road leaving the property with their vehicles. As the officers approached the truck, McCormack and his companions "scurried" into the nearby woods. Tr. Vol. 2, p. 117. Detective Shrader soon located McCormack hiding under a bush. Also located were Joseph Patrick ("Patrick"), Scott Snyder ("Snyder"), and Tabitha McPeek ("McPeek"). The police took McCormack and the others into custody.

[6] The police obtained a warrant to search the property, where they located five trucks, one of which—the one McCormack had been seen near—was Austin's stolen Ford F350. The lower portion of the truck had been spray-painted black, and the plastic covering the keyhole on the door had been punched out. The keyhole had been altered, and the mirrors, tires, and tailgate had been removed and replaced with parts from a white 2011 Ford F350 pickup truck found on the property. This white truck had been reported stolen as well, and its hood, bumpers, headlights, and doors had been removed, as had some of its interior components and engine parts. The wheels on the white F350 had been replaced with the wheels from Austin's gold F350.

[7] Also found on the property was a Dodge Ram pickup truck that had been reported as stolen from Kentucky. When it was stolen, the Dodge was painted green, but it had been spray-painted black when the police recovered it at the Hoover Road property. Two other vehicles, which had not been reported as stolen, were also found on the property: a red Ford F150 pickup truck, owned by Patrick, and a white 1994 Dodge Dakota. McCormack was known to drive a white Dodge Dakota, and Patrick stated that he had seen McCormack inside

the white Dakota when he arrived. Inside the Dakota, the police found the white F350's doors, seat, and plastic interior panels. A basket containing cans of spray paint was found sitting on the top of the Dakota.

[8] In custody, McCormack told the police that he had been working on the gold F350. Patrick stated that he helped McCormack and the others "dismantle" the white F350 and Austin's gold F350 or several hours before the police arrived. Tr. Vol. 2, pp. 141, 152. McCormack's roommate, Laura Gillespie, testified that McCormack drove a white Dodge Dakota. She also stated that both she and McCormack knew Snyder to be a car thief before the current incident. McCormack also told the police he knew that Snyder had been known to steal vehicles. Ex. Vol., State's Ex. 63 at 2:34–2:38.

[9] On May 17, 2017, the State charged McCormack with one count of Level 6 felony receiving stolen auto parts. The State later amended the information to allege that McCormack was an habitual offender. A three-day jury trial commenced on December 14, 2018, at the conclusion of which the jury found McCormack guilty as charged. The jury also found McCormack to be an habitual offender. The trial court sentenced McCormack on December 19, 2018, to two and one-half years, enhanced by two years based on the habitual offender finding. McCormack now appeals.

## Discussion and Decision

[10] McCormack argues that the State failed to present evidence sufficient to support his conviction for Level 6 felony receiving stolen auto parts. When reviewing a

claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses. *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015) (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)), *trans. denied*. Instead, we respect the exclusive province of the jury to weigh any conflicting evidence. *Id*. We therefore consider only the probative evidence supporting the verdict and any reasonable inferences which may be drawn from this evidence. *Id*. We will affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id*.

[11]   To convict McCormack of Level 6 felony receiving stolen auto parts, the State was required to prove that he: "knowingly or intentionally receive[d], retaine[d], or dispose[d] of a motor vehicle or any part of a motor vehicle of another person that has been the subject of theft . . . ." Ind. Code § 35-43-4-2.5(c) (2017);[1] Appellant's App. p. 24.

[12]   McCormack attacks the sufficiency of the evidence supporting his conviction on several grounds. First, he claims that there was no evidence that he was ever seen in possession of stolen parts. Emphasizing the evidence that does not favor his conviction, McCormack claims that Detective Shrader did not see him holding anything or doing anything to the trucks but merely saw him repeatedly walk away from the truck and return. This argument overlooks the evidence

---

[1] This statute was repealed effective July 1, 2018, and the theft/receiving stolen property statute was amended to include provisions for motor vehicles and motor vehicle parts. *See* P.L.176-2018, §§ 6, 7.

that demonstrated that McCormack was seen "dismantling" a "four door, long bed white truck." Tr. Vol. 2, pp. 134, 141, 152. Although McCormack argues that there is no evidence to establish that this white truck was the stolen white F350, the State's submitted evidence that the white F350 was the only four-door white truck on the property. *See* Ex. Vol., State's Exs. 41–49 (photographs of two-door white Dodge Dakota); State's Exs. 19–37 (photographs of four-door white Ford F350). From this, the jury could reasonably conclude that McCormack was in possession of parts from the stolen white F350 when he dismantled this vehicle.

[13] Moreover, the white F350's doors, seat, and plastic interior panels were all located in the bed of the Dodge Dakota that McCormack had been driving, and a basket containing cans of spray paint was found on the hood of that truck. McCormack claims that there was no evidence regarding who owned the white Dodge Dakota. Regardless of who held legal title to the white Dakota, the State presented evidence showing that McCormack was driving the vehicle that day. McCormack was seen driving a white Dakota the day before he was arrested, and Patrick saw him sitting in the white Dakota when he arrived.

[14] McCormack also contends that there was no proof that the white Ford F350 from which he was seen taking the parts was stolen. To the contrary, Lieutenant Michael Moore ("Lt. Moore") of the Brown County Sheriff's Department testified that the white Ford F350 and had been stolen from the Columbus area. Tr. Vol. 2, p. 118. And Deputy Joshua Stargell ("Deputy Stargell") testified that he ran the VIN number on the white F350 through the

Indiana Data and Communication System database and confirmed that the white F350 was stolen. *Id.* at 63–64. McCormack argues on appeal that this evidence is not trustworthy because it was hearsay. However, McCormack made no objection to this testimony at trial. It is well settled that "'[o]therwise inadmissible hearsay evidence may be considered for substantive purposes and is sufficient to establish a material fact at issue when the hearsay evidence is admitted without a timely objection at trial.'" *Humphrey v. State*, 73 N.E.3d 677, 684 (Ind. 2017) (quoting *Banks v. State*, 567 N.E.2d 1126, 1129 (Ind. 1991)). Thus, whether or not Lt. Moore's or Deputy Stargell's testimony constituted hearsay, it was admitted without objection and could be considered for substantive purposes, i.e. to establish that the white F350 was stolen.

[15]    McCormack also argues that his flight from the scene when the police arrived cannot be considered as evidence of his guilt. In *Willis v. State*, 27 N.E.3d 1065, 1067 (Ind. 2015), our supreme court wrote:

> [T]his Court has held "[t]he fact that a defendant flees or does not flee does not indicate either guilt or innocence **of itself**. . . ." *Dill v. State*, 741 N.E.2d 1230, 1232–33 (Ind. 2001) (finding trial court error in giving the jury a flight instruction). We elaborated, "it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." *Id.* at 1233 (quoting *Alberty v. United States*, 162 U.S. 499, 511 (1896)) (alteration omitted). Thus, something more than running from the scene is necessary in order to infer Willis' guilt.

*Id*. at 1067 (emphasis added). In *Willis*, the only evidence connecting the defendant to the crime of criminal trespass was his flight from the police near the scene of the trespass. *See id*. at 1067–68. Thus, his flight from the scene was insufficient to support his conviction. *Id*. at 1068.

[16] Less than a month later, our supreme court reaffirmed the general rule that "'[e]vidence of flight may be considered as circumstantial evidence of consciousness of guilt." *Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015) (quoting *Brown v. State*, 563 N.E.2d 103, 107 (Ind.1990)). "Additionally, '[e]vidence of an attempt to avoid arrest [also] tends to show guilt.'" *Id*. (quoting *Wilson v. State*, 455 N.E.2d 1120, 1123 (Ind. 1983)).

[17] Thus, while something more than fleeing from the scene by itself is necessary to infer guilt, such flight may be considered as circumstantial evidence of consciousness of guilt, which, combined with other circumstantial evidence, may be sufficient to support a conviction. And in the present case, there was much more than mere flight from the scene.

[18] McCormack was aware that Snyder had a reputation as a car thief. McCormack was seen with Snyder dismantling the stolen white F350 and working with the stolen gold F350. Parts from the white F350 were found in the truck McCormack had been driving. Parts from the white F350 had been put onto the gold F350, and the gold F350 had been spray-painted in an obvious attempt to alter its appearance. Spray paint was found on top of the truck McCormack was driving. The locks on trucks had been tampered with, and the gold F350's

ignition was broken such that it could be started with a screwdriver. This, plus McCormack's attempt to hide when the police arrived, is evidence of McCormick's consciousness of guilt.

[19] McCormack also argues that there was insufficient evidence regarding his knowledge that the vehicles, and thus their parts, were stolen. With regard to the knowledge required for a conviction for receiving stolen property, our supreme court has explained that "'[k]nowledge that the property is stolen may be established by circumstantial evidence; however, knowledge of the stolen character of the property may not be inferred solely from the unexplained possession of recently stolen property.'" *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010) (quoting *Barnett v. State*, 834 N.E.2d 169, 172 (Ind. Ct. App. 2005)).

[20] Here, there was much more than the mere unexplained possession of recently stolen property to establish McCormack's knowledge that the vehicles were stolen, including: McCormack's knowledge that Snyder was known as a car thief; the manner in which the vehicles were being dismantled; the fact that the locks on the trucks had been tampered with; the manner in which the vehicles were being repainted to alter their appearance; and the flight of those involved when the police arrived. Even McCormack stated that, when the police arrived and he attempted to hide, he knew he should have listened to his "better instincts" and not have been there given Snyder's reputation. Ex. Vol., State's Ex. 63 at 7:00–7:13.

From this evidence, the jury could reasonably conclude that McCormack knowingly received, retained, or disposed of any part of a motor vehicle that had been the subject of theft. *See J.B. v. State*, 748 N.E.2d 914, 918 (Ind. Ct. App. 2001) (holding that there was sufficient evidence to support juvenile's delinquency adjudication for act that would have been auto theft if committed by an adult where defendant was found riding stolen motor scooter shortly after it was stolen, the scooter's license plate was missing, the lock and ignition had been broken, and when confronted, the juvenile attempted to flee).

## Conclusion

The State presented sufficient evidence to establish that McCormack knowingly received, retained, or disposed of any part of motor vehicle that had been the subject of theft and that McCormack knew that the vehicles had been stolen. Accordingly, we affirm McCormack's conviction for Level 6 felony receiving stolen auto parts.

Affirmed.

Robb, J., and Pyle, J., concur.